Appeal of MITCHELL M. FREY, Jr., ET          Docket No. 391.
AL., Executors William B. Scaife Estate.

> Losses sustained in illegal gambling operations are not deductible under section 214(a) of the Revenue Act of 1918.

Submitted December 9, 1924; decided January 16, 1925.

*C. Hale Sipe, Esq.*, for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal involves a deficiency in income taxes for the years 1919 and 1920 in the aggregate amount of $31,593.02. From the testimony and documentary evidence introduced at the hearing, the Board makes the following

FINDINGS OF FACT.

1. William B. Scaife, at the time of his death, was a resident of the city of Pittsburgh, Pa. He was a man with large personal income and a penchant for gaming.
2. For several years prior to 1919 the deceased had been interested in sports and sporting affairs and had gambled with regularity on the results of such events as yacht races and horse races, as well as on games of chance. He was a successful business man and not a professional sportsman or gambler, and indulged in betting and gaming as an incident to his leisure hours.

3. During the year 1919 he won $900 and lost $26,105 in betting on races and playing poker and roulette. In 1920 he won $26,588 and lost $64,996 in the same manner. It is admitted that these amounts were won or lost on or in illegal operations.

4. Some time during the latter part of 1919 or the early part of 1920, the deceased consulted his attorney regarding the deductibility of his losses in gambling. He was advised that he must include his winnings in his income tax return and that, if he had engaged in gambling for the purpose of profit, he should deduct his losses as "losses sustained during the taxable year * * * if incurred in any transaction entered into for profit."

5. The deceased made out and filed his income-tax return for the year 1919. Therein he included as income his winnings of $900 as a part of his income and deducted $26,105 as the amount of his losses. These losses were itemized in a statement appended to the return which showed that he had bet or gambled during most of the months of the year. Preceding the items of losses, the deceased wrote the following:

In regard to loss in gaming amounting to $26,105 I respectfully request that I be permitted to deduct same in my personal income tax.

The revenue law of 1918 permits the deductions of all losses entered into for profit. The law does not specify that the transaction shall be lawful, it simply specifies that it shall be for profit. Since the Internal Revenue Department taxes gains from transactions of this kind it would seem to logically follow to permit the losses from such transactions as deductions.

I entered into these gaming transactions for profit and the gains I made therein throughout the year amounting to $900 I have included in my gross income under item 5 in C.

The income-tax return of which this statement is a part was duly verified by the taxpayer.

6. In his income-tax return for 1920, the deceased included as income the sum of $26,588 and as losses the sum of $64,996. In a statement attached to the return, and preceding the items showing amounts of losses and gains during eleven months of the year, the deceased wrote the following:

The Revenue Act of 1918 permits the deduction of all losses entered into for profit. The law does not specify that the transaction shall be lawful, it simply specified that it shall be for profit. Since the Internal Revenue Department taxes gains from transactions of this kind it would seem to logically follow to permit the losses from such transactions as deductions.

I entered into these gaming transactions for profit and the gains I made therein throughout the year amounting to $26,588, I have included in my gross income under item 5 in C.

The income-tax return of which this statement is a part was duly verified by the taxpayer and filed as required by law.

7. The items of losses shown in the statements appended to the income-tax returns for the two years are evidenced by canceled checks drawn on his personal account by the deceased in favor of the various individuals with whom he bet or by whom gambling credit was extended. These indicate that he gambled with some degree of regularity through each of the years 1919 and 1920.

8. The deficiency in taxes determined by the Commissioner for the year 1919 is $9,832.23 and for the year 1920 is $21,760.79. The deficiencies for the two years result from the disallowance by the

Commissioner of the deductions sought to be taken by the deceased for the gaming losses hereinbefore enumerated.

9. William B. Scaife died testate on March 28, 1924, and this appeal is brought by the executors of his estate.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be settled on consent or on seven days' notice in accordance with Rule 50.

### OPINION.

GRAUPNER: The issue presented by this appeal is whether losses sustained in gaming and betting are properly allowable as deductions from gross income under the Revenue Act of 1918.

In presenting this appeal two admissions were made by the taxpayers, viz: (1) all of the gaming operations at which the deceased won or lost money were illegal under the laws of the States wherein they happened; and (2) the deceased paid his losses with full knowledge that they could not be recovered from him in law, and did so under the conviction that they were debts of honor.

The taxpayers claim the losses herein considered are allowable as deductions under the provisions of section 214 of the Revenue Act of 1918. The essential portion of this section reads as follows:

(a) That in computing net income there shall be allowed as deductions: * * * (5) *Losses sustained* during the taxable year and not compensated for by insurance or otherwise, *if incurred in any transactions entered into for profit,* though not connected with the trade or business; * * * (Italics ours.)

The claims for allowance of the deductions prevail or fail upon the application of the italicised language quoted above to the facts disclosed in the findings. That there were gambling losses can not be denied. Whether or not they were deductible as *incurred* in a *transaction entered into for profit* and whether or not Congress contemplated that such losses should be recognized for tax purposes are the questions to be determined.

The word *incur* is defined as: " To have liabilities cast upon one *by act or operation of law,* as distinguished from contract, where the party acts affirmatively." (Italics ours.) Bouvier's Law Dictionary, *Crandall* v. *Bryan,* 15 How. Pr. (N. Y.) 56.

"'The word ' *incurred* ' is defined as to become liable or subject to; to render liable or subject to. Men contract debts; they incur liabilities. In one case, they act affirmatively; in the other, the liability is incurred or cast upon them *by operation of law.*" (Italics ours.) *Bank of Indian Territory* v. *Eckles,* 79 Okl. 159, 91 Pac. 695, and cases cited. See, also, *United States* v. *Distillery, etc.,* 25 Fed. Cases 854, 858; 4 Words and Phrases (1st Ser.) 3257; 2 Words and Phrases (2d Ser.) 1025.

The decisions of the courts of this country have interpreted the words *incur* and *incurred* as pertaining to a liability, i. e., something that can be enforced; that devolves upon a person by act or operation of law. In other words, they have held that a thing *incurred* is

something that can be legally enforced. Such interpretation is sustained in such a number of decisions by various courts of this country that we can not but come to the conclusion that a thing that can not be enforced because it is illegal is something not incurred. Nor can we assume that Congress, in using the word *incurred* in the section above quoted, would intend an unusual meaning to a word, particularly when that unusual meaning would be interpreted to include something illegal. To do so would clearly be contrary to public policy.

Looking into the meaning of the word *transaction*, used in section 214(a)(5) of the Revenue Act of 1918, we are constrained to believe that Congress used that word in contemplation of something that was legal. As was said in *McArthur* v. *Moffett*, 143 Wis. 564, 128 N. W. 445, 33 L. R. A. (N. S.) 264:

The word " transaction " is defined in Pomeroy's Code Remedies, 4th ed. s. 367, as follows: " A negotiation, or a proceeding, or a conduct of business, between the parties, of such a nature that it produces as necessary results two or more different primary rights in favor of the plaintiff, and wrongs done by the defendant which are violations of such rights." In *Craft Refrigerating Mach. Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 25 L. R. A. 856, 29 Atl. 76, it is defined as "something which has taken place whereby a cause of action has arisen. It must * * * consist of an act or agreement or several acts or agreements having some connection with each other in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." This court defines it in the *Emerson Case*, 124 Wis. 369, at page 389, as follows: "Any events in which two or more persons are actors, involving a right which may presently, or by what may approximately occur in respect thereto, be violated, creating a redressible wrong, is a transaction within the meaning of the statute." This seems practically to be the same as Pomeroy's definition. In *Scarborough* v. *Smith*, 18 Kan. 399 (a very interesting and instructive case), it is defined thus: "A transaction is whatever may be done by one person which affects another person's rights, and out of which a cause of action may arise."

In this appeal we are confronted with acts of the deceased which were admittedly illegal. Can it therefore be said that such acts constitute a *transaction* or that he *incurred* any liability therefrom? The fact that all his claimed losses were paid by check would indicate that he paid his bets after he had made his wagers and lost or after he had engaged in poker or roulette and was able to compute his losses. He could not have been compelled to pay any of such losses and he could have stopped payment on the checks given in payment therefor without liability to the payees. Therefore, we think that the operations presented for our consideration did not constitute losses incurred, because there was no enforceable liability to pay them; nor since they were illegal, can we consider them as *transactions*.

It now remains for us to consider the amount of the losses sustained by the deceased from his gaming. In his returns he asserted that he had won $900 during the year 1919 and $26,588 during 1920. As a matter of fact he won nothing and his reported winnings should be disregarded in computing the tax. The Commissioner has argued that each gaming venture is a separate item; that those in which winnings were made stand apart from those in which money was lost and that the totals of the winnings must be returned and taxed, while the totals of the losses may not be deducted.

The fallacy of this contention is well pointed out in *Appeal of James P. McKenna*, 1 B. T. A. 326, and requires no further comment here. The decedent's operations extend through annual periods and his income tax returns were made for like periods as required by the revenue acts. We can no more segregate the varieties of the gambling operations for each year and make distinction thereon than we can say that, in a game of *dealer's choice* poker, the winnings or losses of each hand dealt must be segregated because there was a variation in the form of game in each hand. In consequence of his gambling, Scaife actually lost $25,205 in 1919 and $38,408 in 1920. For the reasons set forth in this opinion, these amounts can not be allowed as deductions.

The deficiency determined by the Commissioner should be recomputed. The amounts of $900 and $26,588 reported as income from gambling for the years 1919 and 1920 respectively, should be stricken from the returns as improper and incorrect and the amounts of $26,105 and $64,996 reported as losses for 1919 and 1920, respectively, should be disallowed for the reasons herein stated.