**Fernando BARBA**

v.

**The UNITED STATES.**

No. 290–82T.

United States Claims Court.

June 10, 1983.

Michael H. Singer, Las Vegas, Nev., for plaintiff; Oshins, Brown, Singer & Wells, Chartered, Las Vegas, Nev., of counsel.

Donald H. Olson, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant; Theodore D. Peyser, Washington, D.C., of counsel.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

Philip R. MILLER, Judge:

Plaintiff claims a refund of federal income taxes withheld from his winnings at two Nevada gambling casinos, on the grounds that as a nonresident alien his winnings were not subject to such taxes, and if they were, they should be offset by his gambling losses during the same year. Both parties have moved for summary judgment.

### I

Plaintiff is a citizen and resident of Mexico and has not been engaged in any trade or business in the United States. While vacationing in Nevada in 1980, he "hit" two keno tickets at the Las Vegas Hilton Hotel for a total of $59,480 in winnings, and one at Harrah's Inc. at Tahoe, for $2,100. Keno is a game of chance generally resembling bingo or lotto. As conducted at the Hilton Hotel casino (and presumably at Harrah's) for each game a player selects in sequence from one to 15 numbers out of a total of 80 on a printed card and places a bet on them. The management then randomly draws 20 numbers. If they coincide with those selected by the player, he wins. The amount he wins depends on the total numbers chosen per game, the total which coincide and the amount he bet. The casino provides a printed keno payment schedule which makes it possible for a bettor to determine precisely what he may win for any combination of 1 to 15 of his numbers drawn.

The casinos withheld and paid over to the Internal Revenue Service $18,474 of the total proceeds of $61,580 to which plaintiff was entitled.

On January 12, 1981, plaintiff reported his keno winnings from the three tickets on a Non-Resident Alien Income Tax Return form for 1980 and requested a refund of the withheld tax. Thereafter, on September 28, 1981, he filed a formal claim for refund, which the Internal Revenue Service disallowed on May 5, 1982.

Plaintiff also alleges that for the entire year 1980 he incurred in excess of $475,000 in gambling losses at the Hilton Hotel. Although this allegation is not supported by affidavit, for purposes of the decision herein it will be assumed to be true.

### II

The section of the Internal Revenue Code [1] the application of which is at issue is:

§ 871. Tax on nonresident alien individuals

(a) Income not connected with United States business—30 percent tax

(1) Income other than capital gains

There is hereby imposed for each taxable year a tax of 30 percent of the amount received from sources within the United States by a nonresident alien individual as—

(A) interest * * * dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, and other fixed or determinable annual or periodical gains, profits, and income.

(26 U.S.C.) (I.R.C.) as amended and in effect during the taxable year at issue.

---

1. Unless indicated otherwise, all references herein are to the Internal Revenue Code of 1954

■ The taxpayer's first contention in support of his claim for refund of the tax is that his gambling winnings do not come within the scope of § 871(a) because they are not "fixed or determinable annual or periodical gains, profits, and income." The words of this statute not having been changed substantially since their original enactment in § 211(a) of the Revenue Act of 1936, ch. 690, 49 Stat. 1648, 1714, to aid our understanding of its meaning we must go back to the purpose and circumstances of the earlier enactment.

Prior to 1936 the income of a nonresident alien was taxed in the same manner and at the same rates as was the income of a resident citizen, except that his gross income was limited to his "gross income from sources within the United States" and his deductions were likewise limited to those connected with the United States. Revenue Act of 1934, §§ 211(a), 212, ch. 277, 48 Stat. 680, 735, 736; *Commissioner v. Wodehouse*, 337 U.S. 369, 380–81, 69 S.Ct. 1120, 1125–1126, 93 L.Ed. 1419 (1949). As a mechanism for collection of the tax, another section of the same 1934 Act provided for withholding of the entire normal tax (then 4 percent) at the source of payment of numerous classifications of income, to wit:

§ 143. Withholding of Tax at Source

\* \* \* \* \* \*

(b) Nonresident Aliens. All persons, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States, having the control, receipt, custody, disposal, or payment of interest \* \* \* rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, of any nonresident alien individual, or of any partnership not engaged in trade or business within the United States and not having any office or place of business therein and composed in whole or in part of nonresident aliens \* \* shall \* \* \* deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 4 per centum thereof \* \* \*. (Revenue Act of 1934, *supra,* § 143(b).)

And § 147(a) provided for filing of information returns by the payors reporting payments of the same categories of income.[2]

Immediately prior to the enactment of the Revenue Act of 1936, there could have been no reasonable doubt as to the includability of gambling winnings in the gross income of nonresident aliens since the statutory definition of gross income for all taxpayers included "gains or profits and income derived from any source whatever." Revenue Act of 1934, § 22(a). Furthermore that was assumed in § 23(g) of the same Act, which allowed deductions from gross income for losses from wagering transactions only "to the extent of the gains from such transactions."

In the Revenue Act of 1936 Congress amended the method of taxation of nonresident alien individuals not engaged in trade or business within the United States and not having an office or place of business therein. The amendments (1) substituted a special flat tax rate of 10 percent on the amount received for the general normal tax and surtax rates on net income; (2) required this entire special tax, in the usual case, to be withheld at the source of the amount received; (3) enumerated the items to be taxed to the nonresident aliens in terms substantially identical to the items on which tax was to be withheld; and (4)

---

**2.** Revenue Act of 1934—
   § 147. Information at Source
   (a) Payments of $1,000 or More. All persons, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, and employers, making payment to another person, of interest, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable gains, profits, and income (other than payments described in section 148(a) or 149), of $1,000 or more in any taxable year \* \* \* shall render a true and accurate return to the Commissioner \* \* setting forth the amount of such gains, profits, and income, and the name and address of the recipient of such payment.

except for the addition of dividends, required withholding of tax by the payors on the same items of income as were subject to tax withholding under the prior law.[3] *See Commissioner v. Wodehouse,* 337 U.S. at 386–87, 69 S.Ct. at 1128–1129.

The committee reports with respect to these 1936 changes reflect that the legislative purpose was not to decrease the tax on nonresident aliens' income from United States sources but to increase it while at the same time relieving the then Bureau of Internal Revenue of difficult or impossible administrative burdens of ascertaining the proper deductions from nonresident aliens' gross income necessary to arrive at their net income and for the basis of property sold in the United States necessary to arrive at capital gains. Accordingly, the tax was levied on amounts received other than as proceeds of sales of property, and without allowing the deductions from gross income generally allowed to citizens, resident aliens or those engaged in trade or business in the United States; but as a trade-off for the absence of such deductions the tax on such gross income was levied at a flat 10 percent rate, generally lower than the combined normal tax and surtax rates applicable to many taxpayers (those having more than $10,000 in surtax net income, see Revenue Act of 1936 §§ 11, 12).[4] As the Su-

3. Revenue Act of 1936—

§ 211. Tax on Nonresident Alien Individuals
(a) No United States business or office. There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12, upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest * * * dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 10 per centum of such amount * * *. and

§ 143. Withholding of Tax at Source
    *    *    *    *    *    *

(b) Nonresident aliens. All persons, in whatever capacity acting, including lessees or mortgagors of real or personal property, fiduciaries, employers, and all officers and employees of the United States, having the control, receipt, custody, disposal, or payment of interest * * * dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits and income (but only to the extent that any of the above items constitutes gross income from sources within the United States), of any nonresident alien individual * * * and not having any office or place of business therein * * * shall * * * deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 10 per centum thereof * * *.

4. The Senate Finance Committee report stated (S.Rep. No. 2156, 74th Cong., 2d Sess. 21, 23, 1939–1 C.B. (Part 2) 678, 691–92:

NONRESIDENT ALIENS AND FOREIGN CORPORATIONS.

* * * In section 211(a) it is proposed that the tax on a nonresident alien not engaged in a trade or business in the United States and not having an office or place of business therein, shall be at the rate of 10 per cent on his income from interest, dividends, rents, wages, and salaries and other fixed and determinable income, with no allowance for the deductions from gross income and credits against net income allowed to individuals subject to normal tax and surtax on net income. * * * This flat tax (in the usual case) is collected at the source by withholding as provided for in section 143. Such a nonresident alien will not be subject to the tax on capital gains, including so-called gains from hedging transactions, as at present, it having been found administratively impossible effectually to collect this latter tax. It is believed this exemption from tax will result in considerable additional revenue from the transfer taxes and from the income tax in the case of persons carrying on the brokerage business. The principal increase in revenue will result, however, from withholding tax on dividends heretofore not required.

H.R.Rep. No. 2475, 74th Cong., 2d Sess. 9–10, 1939–1 C.B. (Part 2) 667, 673–74, is very similar, but adds:

It is believed that the proposed revision of our system of taxing nonresident aliens and foreign corporations will be productive of substantial amounts of additional revenue, since it replaces a theoretical system impractical of administration in a great number of cases.

On the House floor, Representative Hill of the Ways and Means Committee, further stated in support of the amendments (80 Cong.Rec. 6005 (1936)):

We expect to get considerably more revenue out of both non-resident aliens and foreign corporations having no place of business or not engaged in trade or business in this coun-

preme Court characterized the overall purpose of the change (*Commissioner v. Wodehouse,* 337 U.S. at 390, 69 S.Ct. at 1130)—

> Congress recognized a value and a convenience in thus turning to the accessible, fixed and determinable income of nonresident aliens. There is no doubt that these steps sought to increase or at least to maintain the existing volume of revenue.

Thus, it may fairly be concluded that in enacting the language of § 871 of the Internal Revenue Code in the predecessor statute Congress had no intent to exclude from tax the gambling winnings of nonresident aliens from United States sources. Such would have been a gratuitous reduction in revenue inconsistent with the stated purpose of increasing it and not supported or explained by any statement in the legislative history.

Plaintiff argues that since gambling winnings are uncertain they are not within the scope of the statute's phrase "other fixed or determinable annual or periodical gains, profits and income." However, as *Commissioner v. Wodehouse, supra,* makes clear (337 U.S. at 393–94, 69 S.Ct. at 1131–1132), the words "annual" and "periodical" do not mean actually recurring but are

> merely generally descriptive of the character of the gains, profits and income which arise out of such relationships as those which produce readily withholdable interest, rents, royalties and salaries, consisting wholly of income, especially in contrast to gains, profits and income in the nature of capital gains from profitable sales of real or personal property.

Further, there is no reason to construe "fixed or determinable" as meaning that the amount of income must be known be-

fore it is received. The legislative purpose is carried out if the income is sufficiently "determinable" to the payor so that he may readily compute at the flat rate the tax to be withheld before paying out the remainder.

Finally, that gambling winnings of nonresident aliens from United States sources are taxable is confirmed by I.R.C. § 3402(q). Paragraph (1) of this subsection calls for the deduction of a 20 percent withholding tax by payors of gambling winnings in excess of $1,000 if the proceeds are at least 300 times as large as the amount wagered. However, paragraph (2) provides for exemption from such withholding tax of payments of winnings when they are subject to the withholding tax on the gross income of nonresident aliens.[5]

### III

Plaintiff's second line of attack upon the tax is that he had no income subject to the § 871(a) tax because for the entire year 1980 he had net gambling losses of more than $400,000.

Plaintiff bases this argument initially upon the words of the statute: the tax is imposed on "the amount received," and plaintiff did not receive any *net* amount from gambling for the year. But the fact is that plaintiff did receive the $61,580 in keno winnings, and there is no allegation that the losses were from the same transaction nor that he was compelled as a condition of the receipt to put the money back or to gamble again. Since the words of § 871(a) are derived verbatim from a statute dealing with the withholding of tax on items of income, there is no reason to construe "the amount received" to mean the

---

try, than we have been getting under the present plan, because we are going to withhold it at the source, and not take a chance on their making a report of it, or having to send our representatives to some foreign country to find what their net income is, and seek to induce them to pay their tax.

**5.** § 3402. Income tax collected at source

    \*    \*    \*    \*    \*    \*

(q) Extension of withholding to certain gambling winnings

    \*    \*    \*    \*    \*    \*

(2) Exemption where tax otherwise withheld

In the case of any payment of winnings which are subject to withholding made to a nonresident alien individual or a foreign corporation, the tax imposed under paragraph (1) shall not apply to any such payment subject to tax under section 1441(a) (relating to withholding on nonresident aliens) or tax under section 1442(a) (relating to withholding on foreign corporations).

amount of the taxpayer's net income from gambling for the entire year. Had Congress intended that meaning it would have provided for the taxation of the non-business net income rather than gross income of nonresident aliens, and would have specifically authorized the deduction of gambling losses from their gross income as it has in § 165(d) for U.S. citizens, who are taxed on their net "taxable income." (I.R.C. § 1.) The only deductions allowable to a nonresident alien from the "amount received" which is subject to tax under § 871(a)(1) are for theft or casualty losses of non-trade-or-business property located in the United States, for charitable contributions and for personal exemptions. (I.R.C. § 873(b).)

As authority for his position, plaintiff cites *Wittschen v. Commissioner,* 5 T.C. 10 (1945). But that case is at a tangent to the issue herein. There an alien resident of Germany was the beneficiary of a testamentary trust of a U.S. decedent, entitled to the entire net income therefrom after deduction of proper expenses. The Commissioner taxed her upon the gross income of the trust, but the court held that since she did not own the trust assets and was only entitled to receive the net income therefrom she could only be taxed on such net, i.e., the trust's net was her gross income. In contrast, plaintiff here was entitled to and did in fact receive his keno winnings apart from and unaffected by any earlier or later gambling losses during 1980.

Next plaintiff urges that I.R.C. §§ 861, 862 and 863 in combination require the deduction of gambling losses from gambling winnings before the winnings may be deemed United States source income. Subchapter N of the Code is headed "Tax Based on Income From Sources Within or Without the United States." Part I of this subchapter, headed "Determination of Sources of Income," contains the three sections. Section 861, income from sources within the United States, enumerates seven items of gross income which shall be treated as income from sources within the United States: interest, dividends, personal services, rentals and royalties, disposition of a U.S. real property interest, sale or exchange of personal property within the U.S. and underwriting income from insuring U.S. risks. It then provides for deductions of expenses and losses, with the remainder to be included as taxable income. Section 862, income from sources without the United States, lists eight items of gross income: other interest, other dividends, compensation for labor or services performed without the U.S., rentals or royalties from property located without the U.S., gains, profits, and income from the sale or exchange of real property located without the U.S., gains profits and income from the sale or exchange of personal property without the U.S., other insurance underwriting income, and gains, profits and income from disposition of Virgin Islands real estate. This section too provides for deduction of expenses and losses allocable to each. Section 863, items not specified in sections 861 or 862, provides (in part):

(a) Allocation under regulations

Items of gross income, expenses, losses, and deductions, other than those specified in sections 861(a) and 862(a), shall be allocated or apportioned to sources within or without the United States, under regulations prescribed by the Secretary. Where items of gross income are separately allocated to sources within the United States, there shall be deducted (for the purpose of computing the taxable income therefrom) the expenses, losses, and other deductions properly apportioned or allocated thereto and a ratable part of other expenses, losses, or other deductions which cannot definitely be allocated to some item or class of gross income. The remainder, if any, shall be included in full as taxable income from sources within the United States.

Plaintiff argues: (a) that § 863 is the catchall provision, for both §§ 861 and 862, i.e., all other items of U.S. and non-U.S. source income are provided for in .§ 863; (b) that since gambling winnings are not included in either § 861 or § 862, they must be included in § 863; and (c) that if they are U.S. source income, in accordance with § 863 "for the purpose of computing the

taxable income therefrom," that section requires deduction of gambling losses.

The fallacy in plaintiff's argument is in his assumption that the flat tax in § 871 is on "taxable income." I.R.C. § 63 defines "taxable income" to mean adjusted gross income minus the deductions allowed by the chapter imposing income taxes, other than the standard deduction. However, as I have already noted in the previous portion of this opinion, § 871(a) imposes a flat tax (currently 30 percent) on "the amount received" by a nonresident alien which is not connected with his conduct of a domestic trade or business, and Congress intended this to mean "gross" not "taxable" income. Thus the portion of § 863 on which plaintiff relies is not pertinent to the issue herein.

Section 863 originated in substantially the same language in § 217(e) of the Revenue Act of 1921, ch. 136, 42 Stat. 227, 244–45, except that the term "net income" was used in lieu of "taxable income."[6] As indicated in part II of this opinion, prior to 1936 nonresident aliens were taxed on their *net* income from U.S. sources in the same way as citizens were taxed. Thus, until 1936 the method of computing net income from U.S. sourced gross income set forth in the various predecessors of I.R.C. § 863, would have been applicable to the non-business income of nonresident aliens; but it is clearly not applicable now.

Finally, plaintiff argues that deduction of annual wagering losses from wagering receipts is allowable because it is necessary for there to be any gross income at all. Plaintiff cites two early Board of Tax Appeals decisions in support of this thesis: *McKenna v. Commissioner,* 1 B.T.A. 326 (1925) and *Frey v. Commissioner,* 1 B.T.A. 338 (1925).[7] In *McKenna* the Board held that despite the absence of any statutory provision for a deduction of wagering losses

from wagering gains in 1919 and 1920, a professional race track bookmaker's annual receipts had to be netted with his annual losses in order for him to have any actual income subject to tax. In *Frey* the Board extended this rule to the casual gambler as well. However, for the reasons which follow these early decisions are not persuasive precedents herein.

As noted in part II of this opinion, in the Revenue Act of 1934, subsequent to the *McKenna* and *Frey* decisions, Congress enacted the following provision:

§ 23. Deductions from Gross Income

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \*

(g) Wagering Losses. Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.

The same provision has been carried forward in § 165(d) of the current Internal Revenue Code. Thus, it is clear that under the tax statutes since at least 1934 wagering winnings have been includable in *gross income* irrespective of wagering losses, and that such losses only have been deductible from gross income in arriving at net or taxable income. Therefore, the gross income of a nonresident alien not engaged in gambling as a business, is subject to the tax on gross income under I.R.C. § 871(a)(1) without any offset for unrelated wagering losses.[8]

This understanding of the current law is confirmed by courts applying the tax statutes since the Revenue Act of 1934 which have repeatedly held that a casual gambler (such as the plaintiff herein) has gross income from his winnings without regard to whether or not such winnings are in excess of his losses. *McClanahan v. United States,* 292 F.2d 630, 631–32 (5th Cir.), *cert. denied,*

---

**6.** However, net income was similarly defined by § 212(a) of the 1921 Act to mean gross income less the deductions specifically allowed.

**7.** Both acquiesced in. 1925 C.B. (Parts 1–2) 2, 3.

**8.** Plaintiff argues that Congress intended I.R.C. § 165(d) to be merely a limitation on deduction

of gambling losses from gross receipts and not the source of the deduction, which remains implicit in the conception of gross income. But if this were so, Congress would hardly have placed the allowance in a section on deductions from gross income.

368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961); *Johnston v. Commissioner*, 25 T.C. 106 (1955); *Heidelberg v. Commissioner*, 36 T.C.M. (CCH) 566 (1977); *Carter v. Commissioner*, 35 T.C.M. (CCH) 83 (1976); *Umstead v. Commissioner*, 44 T.C.M. (CCH) 1294 (1982). And *see Winkler v. United States*, 230 F.2d 766, 775–76 (1st Cir.1956) and *Ditunno v. Commissioner*, 80 T.C. 362, 376 (1983, Tannenwald, C.J., dissenting).

### *Conclusion*

For the foregoing reasons defendant's motion for summary judgment on the issues discussed herein is granted, and plaintiff's motion is denied. Entry of judgment will be deferred for 30 days to allow plaintiff to make an appropriate motion with respect to the proper disposition of an alternative claim for refund of taxes for the same year which plaintiff states is now pending administratively before the Internal Revenue Service and asserts that plaintiff is entitled to exemptions for dependents.