RICHARD GAJEWSKI, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 22936–80.    Filed May 23, 1985.

*John W. Shea*, for the petitioner.

*Powell W. Holly, Jr.*, and *Robert E. Marum*, for the respondent.

## OPINION

TANNENWALD, *Judge*: This case is before us upon the reversal and remand of our decision (T.C. Memo. 1983–133) by the United States Court of Appeals for the Second Circuit (723 F.2d 1062 (2d Cir. 1983)). In our decision, we held that petitioner's gambling losses during the taxable years 1976 and 1977 were deductible as trade or business expenses under section 62(1),[1] and were therefore not tax-preference items for minimum tax purposes. In so holding, we applied the "facts and circumstances test" for determining whether petitioner was in a trade or business, a test we adopted in our Court-reviewed opinion in *Ditunno v. Commissioner*, 80 T.C. 362 (1983), overruling our prior decision in *Gentile v. Commissioner*, 65 T.C. 1 (1975), which had adopted as the test for determining whether a taxpayer was engaged in a trade or business the holding of one's self out by offering goods or services. In reversing our prior decision herein, the Second Circuit rejected the *Ditunno* test and adopted the *Gentile* test. It then "remand[ed] the case for further proceedings in accordance with this opinion." 723 F.2d at 1067.

Petitioner, stating that the instant case is before us "on its own merits," first urges that we follow our decision in *Groetzinger v. Commissioner*, 82 T.C. 793, 803 (1984), which reaffirmed the position we had taken in *Ditunno* and reiterat-

---

[1] Unless otherwise indicated, all references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years at issue.

ed the "facts and circumstances test" based upon such considerations as the frequency, extent, and regularity of the activity in question.[2] Petitioner clearly cannot prevail on this basis. The Court of Appeals for the Second Circuit did not remand the instant case for consideration "on the merits." Rather, it remanded for further proceedings in accordance with its opinion, which clearly stated: "In our view the earlier-established 'goods and services' requirement rather than the 'facts and circumstances' approach is the appropriate *minimum standard * * * for determining whether a taxpayer is engaged in 'trade or business.'*" 723 F.2d at 1066; emphasis added. Since petitioner clearly does not satisfy the *minimum standard* (indeed he makes no argument that he does), we have no choice but to hold that he is not engaged in a trade or business so as to qualify for the deduction of his gambling losses in computing adjusted gross income for purposes of the minimum tax.[3]

Petitioner next argues that the 16th Amendment requires that we net his gambling losses against his gains in order to determine whether he has income which Congress can constitutionally tax, under the principles articulated in *Eisner v. Macomber*, 252 U.S. 189 (1920).[4] We reject this contention. To understand our reasons for doing so requires a recital of some legislative and judicial history. Prior to 1934, when there was no specific provision governing the deductibility of gambling losses, the Board of Tax Appeals adopted a "netting" approach.

---

[2] We also followed *Ditunno* in *Meredith v. Commissioner*, T.C. Memo. 1984-651; *Wells v. Commissioner*, T.C. Memo. 1984-507; *Stein v. Commissioner*, T.C. Memo. 1984-403, on appeal (3d Cir., Oct. 26, 1984); *Cull v. Commissioner*, T.C. Memo. 1983-80, revd. 746 F.2d 1148 (6th Cir. 1984), petition for cert. filed Jan. 2, 1985; and *Nipper v. Commissioner*, T.C. Memo. 1983-644, affd. by court order 746 F.2d 813 (11th Cir. 1984).

[3] We so conclude, not on the basis of respondent's argument that we are required to do so by *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. on the substantive issue 445 F.2d 985 (10th Cir. 1971), but on the basis of the mandate of the Court of Appeals *in this case*. *Golsen* specifies only the circumstances under which we will follow a decision *in another case* by the particular Court of Appeals involved.

[4] In his brief in the prior proceeding herein, petitioner raised additional constitutional arguments based upon alleged discrimination in light of the treatment accorded other gamblers. Because of our prior holding in petitioner's favor, we did not previously consider these arguments or the one advanced herein. Nor did petitioner ask the Second Circuit to consider these grounds as alternative arguments in support of his defense against respondent's appeal. Petitioner has now abandoned the arguments based upon alleged discrimination which, in any event, we believe were without merit (see *High Plains Agricultural Credit Corp. v. Commissioner*, 63 T.C. 118, 127 (1974)), and has confined his constitutional contention as stated in the body of this opinion. We believe that, in view of the fact that the Second Circuit did not consider this argument, it is appropriate for us to do so on this remand.

Thus, in *McKenna v. Commissioner*, 1 B.T.A. 326 (1925), a professional gambler's, i.e., bookmaker's, *gross income*, as defined by section 213(a) of the Revenue Act of 1918, 40 Stat. 1058, was limited to the aggregate of his receipts less disbursements to bettors, or his "actual" gain. The Board extended this netting approach to the casual gambler's gross income calculation in *Frey v. Commissioner*, 1 B.T.A. 338 (1925).[5]

In 1934, Congress enacted the provision that later became the present section 165(d): "Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Since that time, the courts, with the exception of the Court of Appeals for the First Circuit in *Winkler v. United States*, 230 F.2d 766 (1st Cir. 1956), have consistently rejected the "netting" approach, and instead have included gambling winnings in gross income and treated gambling losses as itemized deductions, subject to the statutory limitation that such losses could not exceed such winnings. E.g., *McClanahan v. United States*, 292 F.2d 630, 631–632 (5th Cir. 1961); *Johnston v. Commissioner*, 25 T.C. 106, 108 (1955).[6]

The impact of the 1934 statutory change was specifically addressed by the Court of Appeals for the First Circuit in *Winkler v. United States, supra*. In that case, that court expressed the view that, under the statute, a "casual" gambler's losses could no longer be deducted in determining gross income; they could, however, be deducted, up to the amount of gambling winnings, *from* adjusted gross income in determining taxable income. As to the "professional" gambler, the Court of Appeals continued, "Congress lacked the power to undo the *McKenna* rule by statutory change. Losses up to the amount of gambling winnings continue to be a reduction of the amount to be reported as gross income by the professional gambler." *Winkler v. United States, supra* at 775–776.

The *Winkler* dichotomy, which seemingly throws the blanket of constitutional protection over the "professional gam-

---

[5] Although *McKenna* did not directly place the "netting" approach on a constitutional foundation, there are inferences to that effect in the opinion. *Frey* made no reference to constitutional considerations. It appears that the "netting" approach was developed to avoid the potential discrimination in treatment of taxpayers engaged in gambling activities arising out of the fact that such activities were illegal in some States and not in others, and out of the judicial position that deductions for illegal expenditures should not be allowed.

[6] See also *Heidelberg v. Commissioner*, T.C. Memo. 1977–133; *Carter v. Commissioner*, T.C. Memo. 1976–23.

bler,"[7] but not the "casual gambler," and the fallout, if any, from *McKenna v. Commissioner, supra,* and *Frey v. Commissioner, supra,* provide the focus for our further line of inquiry herein. If petitioner is a "casual gambler," it seems clear that, except for the possible impact of *Frey,* his position herein should be rejected. On the other hand, if he is a "professional gambler," the "netting" approach that petitioner espouses may be required by virtue of the constitutional limitations suggested by the Court of Appeals in *Winkler.*

Several cases have loosely used the term "professional gambler" to include persons who gamble on a regular, "full-time" basis. See, e.g., *Stein v. Commissioner,* 322 F.2d 78, 79 (5th Cir. 1963), affg. a Memorandum Opinion of this Court; *Green v. Commissioner,* 66 T.C. 538, 545 (1976); *Bickers v. Commissioner,* T.C. Memo. 1960–83. In its opinion in *Winkler,* the Court of Appeals did not define the term, but it seems clear from an examination of the opinion that the Court of Appeals had in mind a gambler whose activities, unlike those of a "casual gambler," involved an ongoing commitment to losses which he hoped would be exceeded by his winnings. See 230 F.2d at 769.[8] Moreover, since *Winkler* dealt with a bookmaker who had customers, it seems clear that the Court of Appeals did not intend a "professional gambler" to be a person who

---

[7]The precise scope of the decision in *Winkler* may well be far narrower than some of its language would suggest. Thus, the First Circuit, at the very end of its opinion, seems to confine its constitutional protection to the requirement that a professional gambler must be entitled to offset "his winnings on each race with his losses *in that same race*" before he has income which can be constitutionally taxed. See 230 F.2d at 776; emphasis added.

[8]The court later discussed "two very real distinctions between the activities of the professional and the casual gambler"—

"First, the casual gambler has no inevitable losses * * * representing the cost of goods raffled off in a lottery. Conceivably the casual gambler might never sustain a "loss" of any kind whatsoever.

"Moreover the casual gambler ordinarily does not view his transactions as a yearly operation. That is to say, even if he should sustain losses he views them as isolated incidents unrelated to his winnings, not intending to exploit the laws of probability in such a way as to emerge with a favorable balance over an extended period of operations. Since the casual gambler views his bets individually as isolated incidents, there seems no good reason why the taxing authority should not do likewise. The professional, by way of contrast, founds his business directly upon the operation of the laws of probability over an extended period of time. When the taxing authority chooses to view his business as a series of unrelated individual transactions it does violence to the truth and arbitrarily deprives him of the benefit of the laws of probability upon which his enterprise is necessarily founded and without which it cannot succeed over any substantial period. [*Winkler v. United States,* 230 F.2d 766, 774 (1st Cir. 1956).]"

Petitioner, in his brief in the prior proceeding herein, asserted that he was a "system bettor." Although we doubt that the *Winkler* court intended its rationale to apply to such a situation, we need not and do not face the issue, since there is no evidence as to whether such a bettor would have the requisite commitment.

gambled for his or her own account, even if such activities were continuous over an extended period. The concept that having (or soliciting) customers is a prerequisite to being a "professional gambler" is implicit in the cost-of-goods analogy upon which the opinion in *Winkler* relied. See 230 F.2d at 769–770. In the instant case, the record simply does not permit us to find that petitioner, whose activities did not involve either the inevitable commitment to losses or the dealing with customers, was a "professional gambler." On the contrary, the foregoing analysis leads inevitably to the conclusion that petitioner was a "casual gambler." Such being the case, he does not come under the blanket of constitutional protection suggested by *Winkler*.

The power of Congress to tax income is extremely broad, and has been held to include the power to tax gross receipts. *Penn Mutual Indemnity Co. v. Commissioner* 277 F.2d 16, (3d Cir. 1960), affg. 32 T.C. 653 (1959); *Waller v. Commissioner*, 39 T.C. 665, 679 (1963).[9] Moreover, the present definition of gross income in section 61(a) was designed to permit Congress to exert "the full measure of its taxing power." *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955); *Helvering v. Clifford*, 309 U.S. 331, 334 (1940). We see no need to indulge in a lengthy analysis of the foundations of that power; the breadth of article I, section 8, clause 1, of the Constitution and the interplay between it and the 16th Amendment are discussed in depth in the opinion of this Court in *Penn Mutual Indemnity Corp. v. Commissioner, supra*. We leave for another day the question of whether we will continue to apply the rationale of *McKenna v. Commissioner, supra*, and *Winkler v. Commissioner, supra*, to the professional gambler who meets the tests articulated by those cases, both of which, we again note, involved bookmakers. As far as *Frey v. Commissioner, supra*, is concerned, we think that subsequent legislative and judicial history has sapped it of its vitality. See *Barba v. United States*, 2 Cl. Ct. 674, 680–681 (1983), and cases cited thereat; cf. *Hicks v. Commissioner*, 47 T.C. 71, 74 (1966).

---

[9]Not having been a professional gambler, petitioner could not claim that his gambling losses were a cost of goods sold, and thus not a legitimately taxable component of gross income. See *Sullenger v. Commissioner*, 11 T.C. 1076, 1077 (1948); see also *Pedone v. United States*, 151 F. Supp. 288 (Ct. Cl. 1957); 1 J. Mertens, Law of Federal Income Taxation, secs. 4.07, 5.10 (1981).

Concededly, the application of the minimum tax to petitioner appears harsh, but given the mandate of the Second Circuit and our inability to discern any constitutional infirmity, we have no choice but to hold that petitioner is subject to the alternative minimum tax.[10]

As to the revised deficiencies and revised additions to tax,

*Decision will be entered for the respondent.*

---

[10]We note that Congress, in a 1982 amendment to the minimum tax provisions, provided without comment that, in determining "alternative minimum taxable income," adjusted gross income is to be reduced by wagering losses allowable under sec. 165(d). Pub. L. 97–248, sec. 201(a), 96 Stat. 411 (1982); H. Rept. 97–760 (Conf.) (1982), 1982–2 C.B. 600, 603. Such amendment was prospective only. Pub. L. 97–248, *supra* at sec. 201(d)(1). Had Congress intended this change to apply to taxpayers in petitioner's position it would have either effected it earlier or made the amendment retroactive. See *Buttke v. Commissioner,* 72 T.C. 677, 680–681 (1979), affd. per curiam 625 F.2d 202 (8th Cir. 1980).