DAVID HOCHMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hochman v. Commissioner
Docket No. 25862-83.
United States Tax Court
T.C. Memo 1986-24; 1986 Tax Ct. Memo LEXIS 580; 51 T.C.M. (CCH) 311; T.C.M. (RIA) 86024; January 22, 1986. *580 P was a casual, i.e., nonprofessional gambler, whose gambling losses exceeded his winnings in 1980. He was also a taxpayer who could be claimed as a dependent on the return of another. Held, P's gambling losses are items of itemized deduction, limited as provided in sec. 165(d), I.R.C.Held further, P was entitled neither to the zero-bracket amount nor to any itemized deductions in computing his taxable income, under sec. 63, I.R.C., under the facts of this case. Otto J. Scerbo, for the petitioner. Robert B. van Grover and Frank Agostino, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: For the calendar year 1980, respondent determined a deficiency in petitioner's income tax in the amount of $266. By amendment to his answer, filed by leave of Court in order to conform the pleadings to the proof, see Rule 41(b), [1] respondent claimed an additional deficiency for 1980 in the amount of $63, pursuant to section 6214(a). After concessions, the issues which we must decide involve the correct application of section 165(d) in computing the taxable income from wagering of a casual and nonprofessional gambler. The case was submitted on a fully stipulated set of facts and exhibits *581 under Rule 122, which are incorporated herein by this reference and form the basis of our findings herein. Petitioner was a resident of Clark, New Jersey, at the time of filing his petition herein. For the year 1980, petitioner filed an income tax return as a single individual. At various times during the year 1980, petitioner gambled on horse races being run at various tracks. He was not in the trade or business of gambling, but was a casual or recreational gambler. In the year 1980, petitioner made various bets on various horses in various races at various tracks on the following dates, and with gross winnings and losses as follows: Date
Winnings [2] *582 Losses [3]
January
1
$1,164.60
$ 212.00
January
6
245.00
January
8
85.00
January
15
106.00
March
6
100.00
March
7
247.00
135.00
March
28
66.00
April
22
100.00
May
23
318.00
August
28
120.00
September
12
78.80
210.00
TOTALS
$1,490.40
$1,697.00
Petitioner's gambling losses exceeded his gambling winnings for the year 1980. In his income tax return, petitioner reported no income or losses from gambling, but reported wages of $1,534 and interest income of $1,842.74. Petitioner claimed no itemized deductions in his income tax return. He could have been claimed as a dependent on his parent's return. In accordance with the instructions on Schedule TC of his 1980 return, therefore, petitioner reduced the zero-bracket amount attributable to him in 1980 under section 63(d)(2), in the amount of $2,300, by $1,534, representing his earned income for the year. This resulted in a net figure of $766, which, when added to the reported income, produced a figure of $4,142.74, upon which petitioner computed a tax of $116. Petitioner claimed credit for $232.60 of income tax withheld at the source on his gambling winnings, and therefore claimed an overpayment of $116.60. Upon audit, respondent *583 determined, inter alia, that petitioner had realized taxable gambling winnings of $1,164 in 1980, and increased petitioner's taxable income accordingly. By amended answer, and to conform with the facts as stipulated by the parties, respondent claimed an increased deficiency based upon additional taxable gambling winnings of $326.40. Petitioner's attack herein is based upon two broad propositions: (1) Petitioner contends that his gambling losses may be offset against gambling winnings, at least to the full extent of the latter, and that no reportable gross income, within the meaning of section 61 of the Code, is derived unless gambling winnings exceed gambling losses. Petitioner thus argues that his gambling losses are not an item of itemized deduction, but rather that they are in the nature of a "cost of goods sold," which are to be offset against gross receipts from gambling in order to arrive at gross income in the first instance. (2) Petitioner further contends that the operation of section 63 in this case is to deny him any deduction for his gambling losses, even if viewed as itemized deductions. We treat each of these points of argument separately. (a) The Nature of Gambling *584 Losses
Although early cases, decided prior to the enactment of section 23(h) of the Internal Revenue Code of 1939, were not entirely clear on the question whether a gambler's losses should be considered as an item of itemized deduction (to be subtracted from gross income in order to arrive at net income), or rather as an item of cost of goods sold (to be excluded from gross receipts in arriving at gross income), see McKenna v. Commissioner,1 B.T.A. 326 (1925), and Estate of Scaife v. Commissioner,1 B.T.A. 338 (1925), the weight of authority now appears to be that although all gamblers must include their winnings in gross income under section 61, a professional gambler, i.e., one engaged in the trade or business of gambling, may aggregate his winnings and losses and take the latter as a deduction in arriving at adjusted gross income under section 62(1). Groetzinger v. Commissioner,771 F.2d 269 (7th Cir. 1985), affg. 82 T.C. 793 (1984); Ditunno v. Commissioner,80 T.C. 362 (1983), appeal dismissed (6th Cir. 1983); Gajewski v. Commissioner,84 T.C. 980 (1985); Stein v. Commissioner,T.C. Memo. 1984-403. [4] *586 In the case of a taxpayer not engaged in such trade or business, however, his *585 losses are allowable as itemized deductions only against his adjusted gross income for the purpose of arriving at taxable income, pursuant to sections 63(b) and 63(f). Winkler v. United States,230 F.2d 766 (1st Cir. 1956); Groetzinger v. Commissioner,supra;Gajewski v. Commissioner,supra;Stein v. Commissioner,supra.In either case, however, the deductions which a taxpayer may take on account of gambling losses may not exceed his gambling gains. Section 165(d). [5]Humphrey v. Commissioner,162 F.2d 853 (5th Cir. 1947), cert. denied 322 U.S. 817 (1947), revg. a Memorandum Opinion of this Court; Gajewski v. Commissioner,supra;Offutt v. Commissioner,16 T.C. 1214 (1951). In the case of the casual gambler such as this petitioner, therefore, it is clear that the deduction allowed by section 165(d) is an item of itemized deduction, section 63(f), to be used, not to exceed the amount of gambling winnings reported as part of his adjusted gross income (as defined in section 62), for the purpose of arriving at taxable income under section 63(b). There is one aspect of the instant case, however, which, although not clearly delineated nor briefed by either party, should be addressed. Our findings of fact reflect petitioner's "winnings" and "losses," exactly as stipulated by the parties. It appears clear from that stipulation, however, that petitioner's "winnings" were stated in gross, i.e., the gross "payoff" to petitioner, including the price of the winning tickets. *587 The price of such winning tickets was further included among the price of the losing tickets under the column for "losses." Even in the case of a casual gambler such as this petitioner, who had no "cost of goods sold," or trade or business deductions - because he was not engaged in a trade or business - a distinction of principle must be made. Although the power of Congress to tax income is very broad, and although section 61 is intended to reach and tax all income, from whatever source derived, Glenshaw Glass Company v. Commissioner,348 U.S. 426 (1955), and although deductions are a matter of legislative grace, to be bestowed or withheld by Congress, New Colonial Ice Company v. Helvering,292 U.S. 435 (1934), gross income still does not include the return of capital. The latter is an exclusion from gross receipts, and its allowance is not a matter of legislative grace, but rather a matter of determining the true gross income which constitutionally may be taxed. Eisner v. Macomber,252 U.S. 189 (1920); Doyle v. Mitchell Brothers Company,247 U.S. 179 (1918); Sullenger v. Commissioner,11 T.C. 1076 (1948); see 1 Mertens, Law of Federal Income Taxation, sections 5.06, 5.10 (1985). *588 To the extent that the cost of his winning ticket is included in the payoff which petitioner receives at the cashier's window on a winning race, therefore, petitioner has only recovered his capital, and is entitled to exclude the amount of that winning ticket from his gross receipts in order to arrive at gross income within the meaning of section 61. Such recovery of capital, however, would clearly not include the cost of tickets which did not win. The latter items were separate wagers, made without reference to the winning wager, and are allowable only as permitted by section 165(d). [6]
To the extent of the cost of his winning ticket or tickets, therefore, petitioner would theoretically be entitled to exclude such cost from his gross winnings in order to arrive at gross income under section 61 and adjusted gross income under section 62. In the instant case, however, the facts do not enable us *589 to identify the amount of the cost of those winning tickets, since they were grouped into the column of "losses," which included the cost of losing tickets. Petitioner therefore failed to carry his necessary burden of proof with respect to these items, and we must uphold respondent's determination in treating the entire amount of his winnings, as stipulated by the parties, as being his gross income from gambling in 1980. (b) The Allowability of Petitioner's Gambling Losses Herein
Holding, as we do, that petitioner's losses, represented by the cost of losing tickets are allowable only as an itemized deduction under section 165(d), in an amount not to exceed petitioner's adjusted gross income from gambling, we examine what happened in the instant case. In his return for 1980, petitioner did not itemize his deductions. Absent such an election, and unless his itemized deductions exceeded the applicable zero-bracket amount, he would therefore normally not be entitled to claim itemized deductions. Section 63(g)(1) and (g)(2). He was, however, to be treated as having made such an election, since, as stipulated by the parties, he was entitled to be claimed as a dependent in his parent's *590 return for that year. Section 63(g)(3). Since such excess itemized deductions (as disclosed by this record) were his gambling losses, limited by section 165(d) to the amount of $1,490.40 (his adjusted gross income from gambling, as stipulated by the parties), and since such amount was less than the zero-bracket amount allowable to petitioner for that year ($2,300), petitioner was tentatively entitled to use only the zero-bracket amount in computing his tax. Section 63(d). Petitioner's adjusted gross income, however, after having been reduced by the sum of his excess itemized deductions (there were none), his personal exemption, and any direct charitable deductions (there were none), then had to be increased by his "unused zero-bracket amount (if any)," as provided by section 63(b). In petitioner's case, since his earned income ($1,534) exceeded his itemized deductions, his unused zero-bracket amount was to be computed by reducing the zero-bracket amount of $2,300 by such earned income, as provided by section 63(e)(2). Such computation, as correctly shown in petitioner's return, produced the amount of $766 which was correctly added to his taxable income. Petitioner complains that *591 this had the effect of denying him all deductions under section 165(d) on account of his gambling losses. This is literally true, but it is also clear that this is the result which Congress intended, not only as to gambling losses but as to any other type of itemized deduction in the case of a petitioner such as this one who could be claimed as an exemption on someone else's return. The clear congressional purpose was to deny such taxpayers, who had no itemized deductions in excess of the zero-bracket amount, the benefit of such zero-bracket amount, except to the extent that the zero-bracket amount was exceeded by the taxpayer's itemized deductions or his reported net income, whichever was greater. Section 63(e)(2). In this, petitioner's losses from gambling stood on the same footing as nay other item of itemized deduction otherwise allowable to him. This was in fact the computation which petitioner used in his return, and we find it correct. Because of concessions not in issue herein, as well as the amendment of respondent's answer to claim a larger amount of deficiency, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. The "Winnings" column is stated in gross, i.e., the full amount of the payoff on the winning ticket, including the price of that winning ticket. 3. The price of the winning ticket or tickets on January 1, March 7 and September 12 is apparently included in the total figure shown for this column for the day. The figure for each day also includes the purchase price of the losing tickets.↩
4. The one possible exception to the above statement may be Winkler v. United States,230 F.2d 766 (1st Cir. 1956), where the Court of Appeals appeared to hold that, in the case of a professional gambler, gambling losses might, at least to some extent, be viewed as in the nature of cost of goods sold, rather than as a trade or business expense, and were therefore to be excluded from gross receipts in arriving at gross income. Whatever the full extent of the rationale in Winkler v. United States,supra,↩ may be, it clearly has no application to the present case, since it applies only to the case of a taxpayer engaged in the trade or business of gambling. It is stipulated in the instant case that petitioner was a casual, i.e., nonprofessional gambler.
5. Sec. 165(d) reads as follows: (d) Wagering Losses.--Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.↩
6. As we have previously noted, the question whether a different approach should be applied to one engaged in the trade or business of gambling is one which we do not reach in this case. Cf. Winkler v. United States,supra;Gajewski v. Commissioner,84 T.C. 980 (1985). See footnote 4, supra.↩