WALTER E. PARCHUTZ, SR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parchutz v. Commissioner
Docket No. 27093-86.
United States Tax Court
T.C. Memo 1988-327; 1988 Tax Ct. Memo LEXIS 355; 55 T.C.M. (CCH) 1357; T.C.M. (RIA) 88327; July 27, 1988. Walter E. Parchutz, Sr., pro se. Marjory A. Gerdes, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent, in a statutory notice dated April 8, 1986, determined deficiencies in petitioner's Federal income taxes for 1982 and 1983 and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6661 [1]
Sec. 6651(a)(1)
1982
$ 13,832.00
$ 1,383.20
--
1983
3,152.00
--
$ 33.15
The issues for decisions are: (1) whether petitioner's 1982 and 1983 gambling losses should be disallowed; (2) whether petitioner is liable for an addition to tax under section 6661 for a substantial understatement of his 1982 income tax liability; and (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to file timely his 1983 return. FINDINGS OF FACT Some of the facts *357 have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Chicago, Illinois at the time he filed the petition in this case. Petitioner goes to racetracks frequently [2] and during the years in issue regularly placed bets at Arlington Park Thoroughbred Race Trace and Chicago Downs Associations, Inc., among other tracks located in the Chicago, Illinois area. On April 15, 1983, petitioner timely filed his Federal income tax return for the tax year 1982. On this return, petitioner reported $ 40,767.00 as "Race Track Winnings" and deducted $ 40,767.00 as "Gambling Losses." Petitioner's 1982 return reflected gross income from non-gambling sources in the amount of $ 8,021.93. Petitioner's 1982 winnings as reflected on Forms W-2G (Statements for Certain Gambling Winnings) [3] totalled $ 39,390.00. Petitioner had substantial 1982 winnings, in amounts less than what was required to be reported on Forms W-2G, that were not reported on his 1982 return. The total amount of bets reflected on losing 1982 wagering tickets which *358 petitioner produced at trial was $ 41,214.00. On May 1, 1984, petitioner filed a Federal income tax return for the tax year 1983. The return was signed by petitioner on April 27, 1984. It has been prepared by a H & R Block employee, whose signature on the return bears the date January 28, 1984. The top of the first page of the return bore the handwritten notation "(Duplicate) Original was filed 2/11/88." *359 On this return, petitioner reported $ 19,056.00 as "Race Trace Winnings" and $ 19,056.00 as "Gambling Losses." Petitioner's 1983 return reflected gross income from non-gambling sources in the amount of $ 1,175.04. Petitioner's 1983 winnings reflected on forms W-2G totalled $ 19,005.37. Petitioner had substantial 1983 winnings, in amounts less than what was required to be reported on For W-2G, that were not reported on his 1983 return. The total amount of bets reflected on losing 1983 wagering tickets which petitioner produced at trial was $ 6,181.00. In 1982 and 1983, petitioner did not receive any substantial gifts, loans, social security payments, or any type of public aid. Petitioner did not have any pre-existing large cash hoards available to purchase wagering tickets during the years involved. His sources of funds were those shown on his tax returns plus unknown amounts of unreported wagering winnings. Petitioner's monthly winnings as reported on Forms W-2G, and amounts shown on losing tickets produced by petitioner and dated the same month, are as follows: 1982
Winnings
Losing Tickets
January
$ 1,200.00
$  7,022.00
February --   6,408.00
March
7,456.50
6,730.00
April
2,278.30
8,307.00
May
1,623.80
5,159.00
June
2,287.10
1,113.00
July
--   51.00
August
10,703.90
121.00
September
905.10
638.00
October
6,799.70
1,808.00
November
--   3,007.00
December
6,135.60
850.00
Total:
[4] $ 39,390.00
$ 41,214.00
*360 1983
January
--     $    38.00
February
--     184.00
March
--     158.00
April
$  2,891.20
537.00
May
723.70
282.00
June
4,727.60
395.00
July
3,843.27
30.00
August
635.30
174.00
September
--     850.00
October
--     134.00
November
3,018.80
2,517.00
December
3,165.50
882.00
Total:
[5] $ 19,005.37
$ 6,181.00
Petitioner did not keep any books, records, or diaries of his 1982 and 1983 winnings or losses except the Forms W-2G and certain losing tickets. Some of the losing tickets reflected purchase dates during a two-week period within the first two months of 1982 when petitioner was confined to a hospital due to a herniated disc. OPINION Gambling losses are deductible *361 only to the extent of a taxpayer's gambling winnings during the same taxable year. Secs. 165(d); 1.165-10, Income Tax Regs.; Gajewski v. Commissioner,84 T.C. 980, 982 (1985). Respondent determined that petitioner failed to substantiate his 1982 and 1983 gambling losses. Petitioner bears the burden of proving error in respondent's determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner has the burden of proving that his alleged losses were in fact sustained. Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. The issue is a factual one to be decided on the basis of all the evidence. Fogel v. Commissioner,237 F.2d 917 (6th Cir. 1956), affg. per curiam a Memorandum Opinion of this Court; Green v. Commissioner,66 T.C. 538, 544 (1976). If there is sufficient evidence in the record to show that petitioner in fact incurred some loss, we may apply the rule laid down in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), to permit deductions by estimating those losses using our best judgment on the record. Drews v. Commissioner,25 T.C. 1354 (1956); *362 Stein v. Commissioner,322 F.2d 78, 83 (5th Cir. 1963), affg. a Memorandum Opinion of this Court. See DelGozzo v. Commissioner,T.C. Memo. 1983-613. Petitioner did not keep any books, records, or diaries of his 1982 and 1983 winnings and losses except (1) Forms W-2G that each racetrack was required to end to respondent pursuant to section 1.6011-3, Income Tax Regs., and (2) a shopping bag of losing tickets which petitioner testified he had purchased. The 1982 and 1983 losing tickets were separated into packets with a segment of adding tape attached to each packet. Petitioner introduced two sheets of paper with handwritten numbers which had been prepared by his sister as a summary of his 1982 and 1983 losing tickets. However, the computations include the cost of losing tickets which were purchased subsequent to the years at issue, and we do not view them as records prepared contemporaneously with gambling activity. Gambling loss tickets are of slight, if any, evidentiary weight where no corroboration is offered of petitioner's *363 own testimony that each losing ticket was purchased by him. See Donovon v. Commissioner359 F.2d 64 (1st Cir. 1966), affg. per curiam a Memorandum Opinion of this Court; Schooler v. Commissioner,68 T.C. 867 (1977); Scoccimarro v. Commissioner,T.C. Memo. 1979-455. In the instant case, petitioner offered only his own uncorroborated testimony that the losing tickets were his. We have no way of knowing whether petitioner purchased these tickets or received them from acquaintances at the track or acquired them by resorting to stooping down and picking up the discarded stubs of other bettors. See Scoccimarro v. Commissioner, supra.Moreover, the credibility of petitioner's testimony that he purchased each of the losing tickets has been undermined since some of the losing tickets were purchased during a two-week period within the first two moths of 1982, when he was confined to a hospital and unable to go to the track. Petitioner reported only a small amount of winnings other than those reported on Forms W-2G; yet, he testified that his unreported winnings could have been triple the amount of the reported wagering *364 income shown on his tax returns. [6] Having little income from sources other than gambling, and few assets, petitioner admittedly would have had to rely on unreported gambling winnings to fund the losing wagers he claims. As noted in the table setting forth petitioner's gambling winnings and losses, during January 1982, petitioner's winnings as reported on Forms W-2G were $ 1,200, and he presented losing tickets which costs $ 7,022; during February 1982, no winnings were reported on Forms W-2G, and he presented losing tickets which cost $ 6,408; during November 1982, no winnings were reported on Forms W-2G, and he presented losing tickets which cost $ 3,007. *365 Where, as in this case, a taxpayer admits receiving unreported winnings, he must establish that his annual losses exceed his annual unreported winnings in order to be entitled to deduct any losses. Donovan v. Commissioner, supra;Schooler v. Commissioner, supra.Although we believe that petitioner must have sustained some losses, petitioner's lack of accurate documentation or other credible corroborating evidence concerning the amount of his losses and unreported winnings affords us no basis to conclude that his losses exceeded his unreported earnings for the years in issue. Donovan v. Commissioner, supra;Schooler v. Commissioner, supra.We recognize that this court has applied the role of Cohan v. Commissioner, supra, and permitted deductions based on estimates where it was convinced that net losses were in fact sustained; however, the record in the case before us provides no satisfactory basis for estimating the amount of petitioner's winnings or losses. Accordingly, we must hold that petitioner has failed *366 to carry his burden of proof and his claimed gambling losses are not allowed. The second issue for decision is whether petitioner is liable for the addition to tax for the substantial understatement of his 1982 income tax under section 6661. [7]The addition to tax is applicable where the amount of understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return, or (2) $ 5,000. Sec. 6661(b). Petitioner bears the burden of proof concerning his liability for the addition to tax. Rule 142. There is no question here that petitioner's understatement of his income tax constitutes a substantial understatement, unless it can be reduced by application of section 6661(b)(2)(B). [8]
*367 Section 6661(b)(2)(B) provides for the reduction of an understatement "by that portion of the understatement which is attributable to": (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Petitioner in this case has not called our attention to any authority for his contested 1982 gambling loss deductions on the facts of this case. He is therefore not entitled to reduce the amount of his substantial understatement on this ground. The amount of understatement of income tax may also be reduced for items where the relevant facts affecting the item's tax treatment are "adequately disclosed" in the return. [9] The relevant facts are adequately disclosed by providing on the return sufficient information to enable respondent to identify the potential controversy involved. *368 S. Rept. No. 97-494 at 274 (1982); Schirmer v. Commissioner,89 T.C. 277, 285-286 (1987). Whether there is adequate disclosure on the return, and which items on the return will be considered in making this determination, depends on the facts and circumstances of the particular case. In this case we think that full disclosure of the relevant facts regarding the tax treatment of the gambling loss deduction would have required a accurate description of both the nature and amount of the deduction an the nature and amount of the related gambling income. Petitioner admitted having substantial amounts of unreported wagering income. He admitted this in the context of explaining the source of funds for his claimed wagering losses when he tried to rebut respondent's evidence that he had insufficient funds to sustain the claimed losses during certain moths. Under the circumstances we find that, for respondent to be fully apprised of the nature of the controversy, he would need accurate information regarding both winnings and losses. Accurate *369 reporting of the amount of wagering income does affect the allowance of the loss deductions under the facts in this case. We have already held that the acknowledged underreporting of wagering income makes it improper to allow the claimed losses unless petitioner establishes that those losses exceed unreported income. Donovon v. Commissioner, supra;Schooler v. Commissioner, supra.
Petitioner understated his wagering income for 1982 by substantial amounts. Since we have found that wagering income was a relevant fact, we find that petitioner failed to disclose and, indeed, misstated relevant facts affecting the disallowed losses. Petitioner is liable for the addition to tax under section 6661 for 1982. The final issue for decision is whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file timely his 1983 return. Petitioner bears the burden of proof concerning his liability for the addition to tax. Rule 142. See Foy v. Commissioner,84 T.C. 50 (1985); Abramo v. Commissioner,78 T.C. 154, 163 (1982). *370 Petitioner's 1983 tax return was due to be filed April 15, 1984. The only 1983 return in evidence is date-stamped received by respondent May 1, 1984. The return was signed and dated by petitioner on April 27, 1984. Petitioner testified that the return in evidence was actually a "duplicate" of two 1983 returns which he had filed previously. Petitioner introduced no evidence to corroborate the alleged timely filing and based on the entire record, we find that petitioner has failed to meet his burden of proving that his 1983 return was timely filed. See Marvin v. Commissioner,T.C. Memo. 1983-126. Due to concessions, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner at trial described himself as a compulsive gambler. ↩
3. Pursuant to section 6041, racetracks making a payment of $ 600 on a winning ticket (exclusive of the amount of the bet) are required to file an information return (Form W-2G) with the Internal Revenue Service indicating, among other items, the name, address, social security number of the winner, and the date and amount of payment. For purposes of identification, the person receiving payment must furnish to the track two types of identification verifying his name, address, and social security number. Sec. 7.6041-1(c), Temp. Income Tax Regs., 42 Fed. Reg. 1471 (Jan. 7, 1977); Wagoner v. Commissioner,T.C. Memo. 1987-614↩. 4. Petitioner's 1982 winnings as reported on Forms W-2G, $ 39,390, are slightly less than the racetrack winnings reported on his 1982 return, $ 40,767. ↩
5. Petitioner's 1983 winnings as reported on Forms W-2G, $ 19,005.37, are slightly less than the racetrack winnings which he reported on his 1983 return, $ 19,056.00. ↩
6. Petitioner appeared to take the position at trial that any winnings below the amounts required to be reported on Form W-G2 were not reported because he did not think they were includable in income. He further testified that he had more losses than he was claiming, but that he only saved enough losing tickets to offset reported income. His explanation for the fact that the 1983 losing tickets presented at trial represent only one-third of the losses claimed for 1983 is that the remainder of the losing tickets were destroyed in a basement flood. ↩
7. The notice of deficiency in which respondent determined the section 6661(a) additions to tax against petitioner was issued on April 8, 1986. As of that date, the section 6661(a) addition to tax was equal to 10 percent of the underpayment attributable to a substantial understatement. Section 6661(a) has twice been amended since then. The section 6661(a) addition to tax is now 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after Oct. 21, 1986. See Pallottini v. Commissioner,90 T.C. 498 (1988). Respondent has neither amended his answer to seek nor sought at trial an increase to the section 6661(a)↩ addition to tax over the amount determined in the notice of deficiency. 8. Petitioner's understatement of Federal income tax for 1982 was $ 13,832. This exceeds $ 5,000 which is greater than 10 percent of the tax required to be shown on the return. ↩
9. Petitioner has not attached a statement to his return; therefore, we need only consider what was shown on the return. ↩