RAYMOND G. FREIBERG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Freiberg v. Commissioner
Docket No. 4187-90
United States Tax Court
T.C. Memo 1992-615; 1992 Tax Ct. Memo LEXIS 646; 64 T.C.M. (CCH) 1092; October 19, 1992, Filed *646 Decision will be entered pursuant to Rule 155. For Raymond G. Freiberg, pro se. For Respondent: Jeffrey L. Bassin. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rules 180, 181 and 182. [1]
Respondent determined deficiencies in petitioner's Federal income tax for taxable years 1986 and 1987, together with additions to tax, in the following amounts: Additions to tax,
Sections
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6654
1986
$ 10,012
$   520
$   501
[1]
$  0 1987
$ 20,156
$ 2,301
$ 1,008
[1]
$ 349
After concessions, the only issue in this case is *647 whether petitioner is entitled to a gambling loss deduction greater than the $ 350 which respondent has conceded for the taxable year 1987. Some of the facts are stipulated, and they, together with exhibits attached to the stipulation, are so found. Petitioner resided at Middletown, Ohio, when he timely filed his petition herein. Petitioner failed to file Federal income tax returns for 1986 and 1987. Petitioner concedes that he failed to report income from wages and interest in each year, as well as income received when he won a Cadillac Eldorado in a raffle in 1987. Further, petitioner has conceded his liability for the additions to tax under sections 6651(a)(1), 6653(a)(1)(A) and (B) for both years, and section 6654 for 1987. Respondent has conceded by stipulation that petitioner is entitled to various itemized deductions and has further advised the Court that petitioner is entitled to an exemption deduction for his daughter Dawn for 1986 and 1987. Petitioner was employed by Armco Inc., a steel corporation located in Middletown, Ohio. On or about July 26, 1987, petitioner won a 1987 Cadillac Eldorado automobile, worth $ 21,121, in a raffle sponsored by his union, the Armco *648 Employees Independent Federation. Petitioner bought $ 350 worth of raffle tickets for the Cadillac, and respondent has agreed that petitioner is entitled to a gambling loss deduction against his winnings of $ 21,121 for this amount. Petitioner is not a professional gambler. Petitioner contends that he is entitled to at least $ 4,000 more in gambling loss deductions in 1987. Petitioner did not keep any books, records, or diaries of 1987 winnings and losses from any of the gambling establishments. In support of his position, petitioner points to a $ 4,000 decrease in his savings account as evidence that he spent at least $ 4,000 on gambling expenses at the end of the 1987 tax year. Even if this testimony were credible, this Court has held that the burden of proving losses cannot be met by the "reverse net worth" method. Mack v. Commissioner, 429 F.2d 182, 184 (6th Cir. 1970), affg. T.C. Memo. 1969-26. But this testimony is not credible. The bulk of these "withdrawals" was no more than transfers from petitioner's savings account to his checking account. Gambling losses are deductible only to the extent of a taxpayer's *649 gambling winnings during the same taxable year. Sec. 165(d); Gajewski v. Commissioner, 84 T.C. 980, 982 (1985); sec. 1.165-10, Income Tax Regs. Respondent determined that petitioner failed to substantiate his 1987 gambling losses. Petitioner bears the burden of proving respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner bears the burden of proving that his alleged losses were in fact sustained. Mack v. Commissioner, supra.The issue is a factual one to be decided on the basis of all the evidence. Green v. Commissioner, 66 T.C. 538, 544 (1976). Petitioner testified that he went to various race tracks at the end of December 1987 because he felt lucky having won the Cadillac the preceding July. In the process, he claims he lost $ 4,000. Petitioner contends that he brought a paper sack with him to the race track, into which he threw his losing tickets. Petitioner brought these tickets to the trial, and they were admitted into evidence. Petitioner submitted hundreds of losing betting tickets from *650 various horse racing tracks in Ohio and Kentucky, as well as from a few miscellaneous gambling activities such as the Ohio lottery. Nearly all of these losing wagers took place at Turfway Park on the last 2 days of the taxable year, December 30 and 31, 1987. The total bets shown on the losing tickets were $ 2,284 and $ 2,848, respectively. Notwithstanding petitioner's presentation of hundreds of losing wager tickets into the record, petitioner conceded at trial that he has no idea who placed the majority of the bets. Petitioner nevertheless insists that he placed at least $ 4,000 worth of the wagers. Analysis of the betting tickets casts serious doubts on petitioner's credibility. Petitioner presented to this Court betting tickets which he could not possibly have purchased. Some tickets which were dated January 1, 1979, were issued by Turfway Park employees as part of a pari-mutual computer maintenance testing procedure. They did not represent wagers. These "tickets" were dated 1979, even though they were produced in 1987, to prevent gamblers from claiming them as their own after their disposal. In addition, many of the tickets were purchased either simultaneously or within *651 seconds of one another at ticket windows ranging through five floors. It is physically impossible for these tickets to have been purchased by one person -- or even by a team of a dozen racers running up and down between the floors. Furthermore, some of the tickets were purchased at an exclusive racing club to which petitioner had no access. Finally, several tickets were crumpled and apparently stepped upon. We believe that petitioner gathered these tickets from the floors and the garbage cans at the race tracks in the final days of the taxable year in an attempt to create a gambling loss deduction. His scavenging was futile. Petitioner, faced with the fact that the losing tickets total more than the $ 4,000 he claims, suggests by implication that other losing bettors at the track dropped their losing tickets into his paper bag. Petitioner's testimony is incredible and bizarre. Petitioner did not sustain his burden of disproving respondent's determination. To give effect to concessions, Decision will be entered pursuant to Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code for the year in issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on $ 2,081 for 1986 and on $ 9,202 for 1987.↩