T.C. Summary Opinion 2007-30

UNITED STATES TAX COURT


MICHAEL FERGUSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21315-05S.                    Filed February 28, 2007.


Michael Ferguson, pro se.

<u>Julie A. Jebe</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect when the petition was filed.[1]  The decision to be entered

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 2003,
the taxable year in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioner's Federal income tax for 2003 of $3,068. Petitioner timely filed a petition with the Court. The sole issue for decision is whether petitioner's gambling activity constituted a trade or business under section 162 and, consequently, whether he was a professional gambler in 2003.

### Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts at trial and accompanying exhibits.

At the time the petition was filed, petitioner resided in Berwyn, Illinois.

During the taxable year in issue, petitioner was employed full-time as a building operating engineer in Chicago and earned approximately $51,840 from his employment in 2003.

In addition to his employment, petitioner spent a good deal of time playing video poker. It was his only form of gambling. Petitioner bet an average of $25 on each hand. He began playing video poker in 1997 and spent an increasing amount of time engaged in the activity.

Video poker is a "casino game based on five card draw poker." Http://en.wikipedia.org/wiki/Video_poker. Players bet

money or credits and then play poker against a computerized machine. See id. One does not play against other players but simply tries to obtain the best hand. After the player's draw, "the machine evaluates the hand and offers a payout if the hand matches one of the winning hands in the posted pay schedule." Id.

Some people, including petitioner, think that if one were to play video poker in a mathematically and theoretically perfect manner, eventually one would realize a profit. Petitioner testified that he tried to only play on machines with an expected payout value of a 100-percent return, meaning he thought he would never lose money;[2] he also testified that the only way to get a return of more than 100 percent is to play on a "progressive" machine.[3] He further testified that despite his hours of practice on a computer and diligent study of the perfect way to play the game, "it didn't work".[4]

---

[2] A payout value or payback rate is the expected return a particular game will provide when played over a long enough period of time. See http://en.wikipedia.org/wiki/Expected_value.

[3] A progressive machine is one which contributes to a progressive jackpot. A progressive jackpot, the highest payoff possible for a gaming machine, arises from a group of several gaming machines linked together. See http://en.wikipedia.org/wiki/Progressive_jackpot. A small amount from every game played on each of the machines increases the value of the jackpot, and the jackpot winner receives money pooled from the entire group of linked machines. See id.

[4] The Court suspects that petitioner's strategy did not
(continued...)

Petitioner spent time traveling to and from the casinos, scouting machines, and studying strategy.  He obtained a tutoring program to learn how to play and avoid mistakes.  Sometimes he would observe other players and watch for a "positive" machine.[5] He would be involved in video poker and related activities two or three times during the workweek and again on weekends.

Petitioner hit at least two big jackpots--approximately $60,000 each--but overall always lost money.  Because he lost more money than he made in 2003, he used some of his savings to support himself.

Petitioner filed a Schedule C, Profit or Loss From Business, for the taxable year 2003.  Reporting as a professional gambler,[6] he claimed $1,311,200 in gross income from gambling, and a

---

[4](...continued)
work because, while some video poker games may have a payback rate at or in excess of 100 percent, assuming "error-free, perfect play", most games offer a payback rate of less than 100 percent, even when played with perfect strategy.  See, e.g., http://en.wikipedia.org/wiki/Video_poker.  Of course, consistently error-free, perfect play is nearly impossible, and most players will lose a few cents or fractions thereof for each dollar bet over the long term.  That said, short-term results do not always follow long-term statistical probabilities, which is why people still gamble.

[5]  A "positive" machine is a machine with a payout rate of 100 percent or better.

[6]  H&R Block, petitioner's tax preparer, determined that petitioner was a professional gambler because he spent more than 20 hours per week on the activity.

corresponding $1,311,200 in gambling losses.[7]  For the year in issue, petitioner did not keep books and records of his win/loss activity and instead relied on the casinos' yearly statements to track his activity for him.

Respondent determined that petitioner was not a professional gambler in 2003.  Accordingly, his gambling winnings should have been reported on line 21 of the Form 1040, U.S. Individual Income Tax Return (Other income).  Respondent also determined that the gambling losses should have been claimed on Schedule A, Itemized Deductions.

Discussion

The issue in this case is whether petitioner's gambling activity in 2003 constituted a trade or business under section 162.  If petitioner were engaged in the trade or business of gambling, his wagering losses, to the extent deductible under section 165(d),[8] would be deducted in computing adjusted gross income.  See sec. 62.  On the other hand, if petitioner were not in the trade or business of gambling, wagering losses, to the

---

[7]  In addition to the $1,311,200 in income and losses from gambling, petitioner also reported $3,000 of "Other income" and $2,820 of "Car and truck expenses" on his Schedule C, neither of which is contested by respondent. Respondent did not raise any substantiation issues as to any of the amounts.

[8]  While sec. 165(a) generally allows losses to be deducted from gross income, sec. 165(d) provides that "losses from wagering transactions shall be allowed only to the extent of the gains from such transactions."

extent deductible under section 165(d), would be deductible as an itemized deduction in the computation of taxable income.  See, e.g., Gajewski v. Commissioner, 84 T.C. 980, 982 (1985); Johnston v. Commissioner, 25 T.C. 106, 108 (1955); see also secs. 67(a), 68(a), 151(d)(3).

In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  The term "trade or business" is not defined in the Internal Revenue Code or the regulations.  That said, it is well established that in order for an activity to be considered a trade or business for the purposes of section 162, the activity must be conducted with "continuity and regularity" and "the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Petitioner testified at trial that playing video poker totally consumed his free time and caused him to lose a lot of money.  But simply spending all of one's free time on an activity does not transform that activity into a trade or business, nor does it make the participant a professional.  Occasionally, devoting all of one's free time to a particular activity may be a sign of addiction.[9]  Further, the amount of time spent engaged in

---

[9]  At trial, petitioner testified that he had himself barred from his usual casinos for 5 years to prevent him from continuing to gamble there.

the activity is not the most significant aspect of the trade or business analysis. More important is the taxpayer's actual or honest objective of making a profit. <u>Keanini v. Commissioner</u>, 94 T.C. 41, 46 (1990); <u>Hulter v. Commissioner</u>, 91 T.C. 371, 392 (1988); <u>Dreicer v. Commissioner</u>, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be actual and honest. <u>Dreicer v. Commissioner</u>, <u>supra</u> at 645; sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be answered from all the relevant facts and circumstances. <u>Hulter v. Commissioner</u>, <u>supra</u> at 393; <u>Hastings v. Commissioner</u>, T.C. Memo. 2002-310; sec. 1.183-2(a), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's mere statement of intent. <u>Dreicer v. Commissioner</u>, <u>supra</u> at 645; sec. 1.183-2(a), Income Tax Regs. The taxpayer bears the burden of establishing he or

she had the requisite profit objective.[10]  Rule 142(a); <u>Keanini</u>

<u>v. Commissioner</u>, <u>supra</u> at 46; <u>Hastings v. Commissioner</u>, <u>supra</u>.

The regulations set forth a nonexhaustive list of factors

that may be considered in deciding whether a profit objective

exists.  These factors include such matters as:  The manner in

which the taxpayer carries on the activity, the taxpayer's

history of income or losses with respect to the activity, and the

financial status of the taxpayer.  See sec. 1.183-2(b), Income

Tax Regs.

No single factor, not even the existence of a majority of

factors favoring or disfavoring the existence of a profit

objective, is controlling.  See <u>id.</u>  In addition, not every

factor is relevant in every case.[11]  <u>Vandeyacht v. Commissioner</u>,

T.C. Memo. 1994-148; <u>Borsody v. Commissioner</u>, T.C. Memo. 1993-

534, affd. per curiam 92 F.3d 1176 (4th Cir. 1996).  Rather, the

relevant facts and circumstances of the case are determinative.

_____

[10]  Generally the Commissioner's determinations are presumed
correct, and the taxpayer bears the burden of proving those
determinations wrong.  Rule 142(a); <u>INDOPCO, Inc. v Commissioner</u>,
503 U.S. 79, 84 (1992); <u>Welch v. Helvering</u>, 290 U.S. 111, 115
(1933).  Under sec. 7491, the burden of proof may shift from the
taxpayer to the Commissioner if the taxpayer produces credible
evidence with respect to any factual issue relevant to
ascertaining the taxpayer's tax liability.  Sec. 7491(a)(1).  In
this case there is no such shift because petitioner neither
alleged that sec. 7491 was applicable nor established that he
fully complied with the requirements of sec. 7491(a)(2).  The
burden of proof remains on petitioner.

[11]  Consequently, we do not analyze in depth all of the
factors enumerated in the regulation but rather focus on some of
the more important ones that lead to our decision.

See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Given the facts and circumstances in this case, we find that petitioner's gambling activity in 2003 was not a trade or business. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner did not carry on his video poker activity in a businesslike manner. See sec. 1.183-2(b)(1), Income Tax Regs. He did not maintain adequate books or records, instead relying on casino records to track his wins and losses from the activity, even though he was aware that there was a threshold amount below which amounts were not reported.

Although petitioner expended a great deal of time and effort engaged in his gambling activity, spending more than 1,000 hours gambling in 2003, see sec. 1.183-2(b)(3), Income Tax Regs., he did not seek additional assistance with or adjust his gaming strategy, even when it became apparent that he never had a winning year, see sec. 1.183-2(b)(2), (6), Income Tax Regs.

We are additionally unconvinced that petitioner's gambling activity meets the standard for being a trade or business because we are not persuaded that an individual who gambles against a machine that is programmed by a casino can have, as his or her primary purpose, income or profit. After all, such a machine is on the floor to make money for the casino and is not there to provide income or profit for the casino's patrons. For most

individuals, gambling against a machine that is programmed to make money for the casino constitutes what the Supreme Court in Commissioner v. Groetzinger, 480 U.S. 23 (1987), characterized as a sporadic activity, hobby, or amusement diversion.[12]  For other individuals, gambling against such a machine may become a habit or an addiction.  In neither scenario is it a trade or business with the participant's primary purpose being income or profit.

The fact that petitioner did not have the requisite profit objective to qualify his gambling activity as a trade or business is by no means to say that petitioner did not wish to make money gambling.  But:

> [N]ot every income-producing and profit-making endeavor constitutes a trade or business.  * * * [T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit.  A sporadic activity, a hobby, or an amusement diversion does not qualify.

Id. at 35.

---

[12]  While we acknowledge that a taxpayer can be simultaneously engaged in more than one trade or business, the facts in the present case are different from those in Commissioner v. Groetzinger, 480 U.S. 23 (1987).  There, the Supreme Court was heavily influenced by the fact that the taxpayer, following the termination of his 20-year employment in February of the taxable year in issue, spent the balance of the year engaged in parimutuel wagering and looked to such wagering for his livelihood.  In contrast, petitioner was employed throughout the year on a full-time basis and relied on his wages to support himself; he did not make his living playing video poker.

## Conclusion

Because petitioner did not have the requisite profit objective, we decide that petitioner's gambling activity in 2003 was not a trade or business, and consequently, that petitioner was not a professional gambler in the taxable year in issue.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for respondent</u>.